UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| R. CHRISTINE KEENER, | ) | Case No. 1:07 CV 3907 |
| | ) | |
| Plaintiff, | ) | Judge Patricia A. Gaughan |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Rebecca Christine Keener appeals for judicial review under 42 U.S.C. §405(g) of the decision of the Commissioner denying disability insurance benefits. Keener at the time of the Commissioner's decision was a younger individual in her forties with past relevant work experience as a licensed practical nurse. She suffers from diabetes mellitus with neuropathy, fibromyalgia and hammer-toe. She contends that these physical impairments caused her to become disabled since April 2, 2002. She applied for disability insurance benefits on March 24, 2003, but on September 15, 2006, an ALJ found that these impairments did not prevent the performance of substantial gainful activity in the form of light exertion with occasional operation of foot controls, and no climbing ladders, ropes or scaffolds. (Tr. 16). The ALJ found that these restrictions did not erode the occupational base for light work and based the determination on Rule 202.21 from Appendix 2, "the grids." The Commissioner adopted this determination making it the final decision.  See 20 C.F.R. §404.981. Keener challenges this decision arguing that the ALJ failed to develop the record, that the ALJ erred in relying on the "grids," and that the ALJ failed to properly analyze Keener's credibility.

1:07 CV 3907                                              2

*Standard of Review:*

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. See §404.1520(a)(4)(i) and (ii) and §416.920(a)(4)(i) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is

1:07 CV 3907 3

unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Secretary of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

*The ALJ did develop the record:*

The ALJ represented to Keener and her counsel at the administrative hearing that "Ms. Keener is highly credible" and that he was prepared to issue a fully favorable decision (Tr. 226, 230). Keener is aggrieved by the inconsistency between the ALJ's determination and his promise made at the administrative hearing. Had the ALJ explained in his written determination why he "flip-flopped" from the statements he made at the hearing, there would be some basis for believing there had been sincerity in the oral commitments. The ALJ offers no explanation for his inconsistency. Keener argues that the ALJ essentially lulled counsel away from a more thorough presentation of Keener's testimony concerning the degree of impairment.

As background for the ALJ's remarks, Keener had continued to work part-time as a licensed practical nurse, but making amounts below the threshold for substantial gainful activity. (Tr. 42-43, 216-17, 226-27). At the administrative hearing the ALJ remarked that "Ms Keener is highly credible" (Tr. 226), but his concern was over whether her earnings and time spent at work would qualify as a trial work

1:07 CV 3907                                                    4

period. See 42 U.S.C. §§ 422(c), 423(a); 20 C.F.R. §404.1592.[1] The ALJ spoke of obtaining earnings data from Keener's employer and that he was prepared to issue a fully favorable decision, so he did not need the services of the vocational expert who was at that moment prepared to testify. (Tr. 226, 230). However, the ALJ did an about-face in the written decision finding Keener not credible and finding she could perform light work without addressing whether a trial work period was in issue, and without reliance on the vocational expert.[2]

Ethically the ALJ does owe Keener a decision which accepts her credibility and is based on consideration of a trial work period. However, this court's jurisdiction is constrained under 42 U.S.C. §405(g) to the standard of review whether the decision is supported by substantial evidence. The rule is that under special circumstances when the claimant is without counsel, not capable of presenting an effective case and is unfamiliar with hearing procedures, then the ALJ has a heightened duty to develop the record. See *Duncan v. Secretary of HHS*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley v. Secretary of Health and Human Services*, 708 F.3d 1048, 1051-52 (6th Cir. 1983). When counsel is present, the ALJ continues to have responsibility for medical record development under 20 C.F.R. §404.1512(d), [3]

---

[1] Definition of the trial work period. The trial work period is a period during which you may test your ability to work and still be considered disabled. It begins and ends as described in paragraph (e) of this section. During this period, you may perform services (see paragraph (b) of this section) in as many as 9 months, but these months do not have to be consecutive. We will not consider those services as showing that your disability has ended until you have performed services in at least 9 months. However, after the trial work period has ended we will consider the work you did during the trial work period in determining whether your disability ended at any time after the trial work period.

20 C.F.R. § 404.1592(a).

[2] The ALJ incorrectly states that Edward Wood, M.R.C. was present and testified as a vocational expert. (Tr. 12, 230).

[3] "[W]e will develop your complete medical history. . . . We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."

1:07 CV 3907                                                5

§404.1529(c)(2), [4] and SSR 83-20 (determining onset date), but there is no special or "heightened" duty. See *Bass v. McMahon*, 499 F.3d 506, 514 (6th Cir. 2007); *Born v. Secretary of Health & Human Services*, 923 F.2d 1168, 1172 (6th Cir. 1990). For example in *Briscoe ex. rel. Taylor v. Barnhart*, 425 F.3d 345 (7th Cir. 2005), the ALJ's unexplained failure to honor the commitment made at the hearing to search for the 2002 hearing file resulted in reversal due to the ALJ's failure to secure the additional medical evidence of record. *Id.*, at 355. Consequently, failure to gather objective or medical source evidence is a neglect of duty and a basis for reversal under 42 U.S.C. §405(g). [5]

Keener has not shown any failure to develop the medical record. Keener testified for nearly 50 minutes and her counsel did question her briefly following the ALJ's promise to issue a favorable decision. (Tr. 228-29). Granted counsel's questioning was brief, but the ALJ had inquired previously into Keener's activities. Keener, "has failed to suggest what other information could have been brought forth by further questioning of [her] which would have enhanced a determination of disability." *Born*, 923 F.2d at 1172, citing *Duncan* 801 F.2d at 856. Keener has not shown prejudice despite being misled by the statement from the ALJ that it was probable that a fully favorable decision was forthcoming.

The undersigned has never encountered a situation where the ALJ has expressed a predisposition toward a favorable decision, and then reneged. It is uncomfortable to countenance deception from a member of the administrative judiciary used to hasten the hearing to conclusion. While this may have

---

[4] "We must always attempt to obtain objective medical evidence . . ."

[5] It is essential that claimant demonstrate an actual failure to develop the record. See *Corcoran v. Astrue*, 2009 WL 189870 (D.Conn.). In *Corcoran* the ALJ told counsel," that I have no reason to doubt the credibility of anything that Mr. Corcoran has testified to so far. So if your intent is simply to present some corroborative testimony it doesn't see to me that that's necessary." *Id.*, 2009 WL 189870, 2. The court held that the ALJ did not neglect the duty of record development since no heightened duty existed under the circumstances. *Corcoran* recognized a principal that the ALJ's duty to develop the facts depends on the record before the ALJ.

1:07 CV 3907                                                                 6

confused and misled counsel, substantial factual evidence was nonetheless placed into the record. Keener has not demonstrated that the ALJ's ruse resulted in incomplete development of the record and consequently the ALJ's ruse did not result in a decision lacking support from substantial evidence.

*The ALJ's reliance on the "grids" was supported by substantial evidence:*

The ALJ can fulfill his duty at the fifth step of sequential evaluation by utilizing the medical-vocational guidelines of Appendix 2, commonly referred to as the "grids." *See* 20 C.F.R. Part 404, Subpt. P, App. 2. The guidelines allow administrative notice to be taken of the existence of jobs considering that individual's residual functional capacity for sedentary, light or medium work, the individual's age, education and prior work experience. *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Kirk v. Secretary*, 667 F.2d 524, 529 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983), *and see* 42 U.S.C. §423(d)(2)(B). These guidelines, however, may only be used as a "framework" if that individual's abilities are restricted by nonexertional impairments that are not included in the guideline considerations. *Abbott*, 905 F.2d at 926-27; *Kimbrough v. Secretary*, 801 F.2d 794, 796 (6th Cir. 1986). The guidelines cannot be used where nonexertional impairments are so significant that the individual does not possess the residual functional capacity on which the guidelines are based. *Damron v. Secretary*, 778 F.2d 279, 282 (6th Cir. 1985); *Kirk*, 667 F.2d at 524. Thus, the guidelines may not be used when a significant nonexertional impairment exists. *Abbott*, 905 F.2d at 927; *Cole v. Secretary*, 820 F.2d 768, 772 (6th Cir. 1987); *Kirk*, 667 F.2d at 524.

The ALJ determined that Keener had a residual functional capacity for light exertion with *occasional* operation of foot controls, and no climbing ladders, ropes or scaffolds based on the residual

1:07 CV 3907                                            7

functional capacities from state agency physicians (Tr. 16, 144-49). These physicians noted "limited" lower extremity operation of foot controls and added "occasional foot controls bilat because of neuropathy." (Tr. 145). The ALJ found that these restrictions did not erode the occupational base for light work and based the determination on Rule 202.21 from Appendix 2, "the grids."

> The ALJ was correct. The regulations define light work as
>
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with **some** pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.(emphasis supplied).
>
> 20 C.F.R. § 404.1567(b).

Keener concedes that the prohibition against work involving ladders, ropes and scaffolds has very little or no effect on the light work occupational base. See SSR 83-14. [6] Keener is focused on the foot control restriction.

The definition of light work is expanded under SSR 83-10 which elaborates "A job is also in this category when it involves sitting most of the time but with **some** pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine

---

[6] Social Security Rulings "are binding on all components of the Social Security Administration" and "represent precedent final opinions and order and statements of policy and interpretations" that have been adopted. 20 C.F.R. 402.35(b)(1). See *McClanahan v. Comm'r of Soc. Sec.* 830, 834 (6th Cir. 2006), citing *Blankenship v. Bowen*, 874 F.2d 1116, 1119 n. 9 (6th Cir. 1989).

1:07 CV 3907                                                       8

operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances)(emphasis supplied)." 1983 WL 31251 at * 5

The ALJ found that Keener could use foot controls occasionally. "Occasionally' means occurring from very little up to one-third of the time." *Id.* However, the regulation and ruling define light work as involving "some" use of foot controls. There is no definition for "some." Keener points out that it requires greater exertion than for sedentary work. The ALJ's reading of the residual functional capacity assessment, though, was reasonable. The range of very little to several hours would be "some" use of foot controls. Contrary to Keener's argument, the ALJ did not ignore a significant detraction from the occupational base for light work. The residual functional capacity was consistent with the ability to perform essentially the full range of light work. Accordingly, the medical-vocational guidelines of Appendix 2 provided the ALJ with substantial evidence for the determination, and to meet the burden at the fifth step of sequential evaluation.

*Credibility:*

The ALJ rejected Keener's claim that her impairments produced incapacitating fatigue. The ALJ reasoned that Keener was not credible because there was a lack of medical documentation for this level of fatigue. (Tr. 15). The ALJ also discussed Keener's daily activities as supporting a light work capability finding. (Tr. 16). The ALJ reported that Keener did housework, and helped her husband on the farm by driving a tractor. Keener quibbles with the ALJ's findings based on her testimony. However, the ALJ noted that Dr Joske, who diagnosed fibromyalgia, reported in February 2003 that Keener "kept up" with her housework despite her claims of low energy. (Tr.13, 141). This was several months after Keener claimed that she became disabled on April 2, 2002. Also Keener told a treating physician, Dr. Royal, that

1:07 CV 3907                                                         9

she had been helping her husband on the farm with baling hay (Tr. 16, 148, 156). The record confirms that Dr. Royal reported in November 2002 that, "She complains of having muscle tiredness and weakness when she's out shoveling, lifting, and bailing (sic) hay. . . . She states that she felt that she felt she would have developed stamina after doing this kind of work for several months, but has not. " (Tr. 156).  The state agency physicians' residual functional capacity assessment included consideration of this report as support for light work capability. (Tr. 148). The ALJ also relied on stress test results of ability to exercise to 11. 4 " METs" ( metabolic equivalents) in nine minutes (Tr. 16, 150). [7]  See 20 C.F.R. Pt. 404., Subpt. P, App. 1 §4.00C(5). The ALJ reasoned that this test result did not "denote that she could sustain such a level of work on a regular basis, the test is consistent with an exertional capacity for medium to heavy work." (Tr. 16).[8]

The role of the court is not to examine the credibility of claimant's testimony or resolve conflicting evidence but rather to determine whether substantial evidence supports the Commissioner's

---

[7] "METs are a measure of exercise workload. Exercising at a level of 10 plus METs is the equivalent of running six miles an hour or shoveling sixteen pounds ten times per minute. See Edward K. Chung, Exercise Electrocardiography, Practical Approach 69-71 (2d ed.1983)."

*Williamson v. Apfel*  1998 WL 833779 at *1 (6th Cir.1998).

[8]  See SSR 82-51:

B. Examples of Cardiovascular Impairments

1. Ischemic heart disease with angina, treadmill exercise test "negative" at 5 METs, but "positive" at 7 METs or less. Medium work activity would be precluded, but ability to engage in light work activity ordinarily would be retained unless restricted by other cardiac impairments such as congestive heart failure. (The terms "negative" and "positive" are defined in Listing 4.04A.)

2. Ischemic heart disease with angina, treadmill exercise test "negative" at 7 METs, but "positive" at 10 METs or less. Heavy work activity would be precluded, but ability to engage in medium work activity ordinarily would be retained unless restricted by other cardiac impairments such as congestive heart failure. (The terms "negative" and "positive" are defined in Listing 4.04A.).
 SSR 82-51(B), 1982 WL 31380 at *4.

1:07 CV 3907                                                10

determination of disability within the meaning of the Social Security Act.  See *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Credibility determinations track pain analysis.  See *Felisky v. Bowen*, 36 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996); *Walters v. Comm. of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997); and see *Saddler v. Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621 (Table 6th Cir. March 4, 1999); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3).

The ALJ's discussion of this issue must contain clearly stated reasons. *Felisky v. Bowen*, 35 F.3d at 1036, citing *Auer v. Secretary  of Health & Human Servs*., 830 F.2d 594, 595 (6th Cir. 1987).  The Commissioner has elaborated on this point requiring that the administrative decisions, " must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) SSR 96-7p, 1996 WL 374186 *1-2; *Saddler* at *2.

The ALJ failed to  acknowledge SSR 96-7p in assessing credibility. (Tr. 15-16).  However, the ALJ need not refer specifically to Social Security Rulings. What matters is whether the ALJ conducts the analysis required by the rulings. *McClanahan*, 474 F.3d at 835. The format set forth in SSR 96-7p outlines the administrative evaluation process beginning with traditional two-prong *Duncan*  pain analysis plus the additional regulatory considerations under 20 C.F.R. §404.1529(c)(3) and §416.929(c)(3).  See *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 853 (6th Cir. 1986); *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Under the two-prong  pain analysis, there first must be a determination whether there exists an underlying medically determinable physical or

1:07 CV 3907                                                    11

mental impairment followed by the question whether the impairment would be reasonably expected to produce the individual's pain or other symptoms. SSR 96-7p, 1996 WL 374186 at *2.

The second question then is the reasonableness of the alleged debilitating pain. The regulatory considerations that follow require the ALJ to investigate subjective complaints of pain or other symptoms based on:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of pain;

3. Precipitating and aggravating factors;

4. The type, dosage, effectiveness, and side-effects of medication to alleviate pain or other symptoms;

5. Treatment, other than medication claimant has received for relief of pain; and

6. Any other measures used to relieve pain (e.g. lying down or changing position).

7. Other factors concerning functional limitations and restrictions due to pain or other symptoms.

See SSR 96-7p, 1996 WL 374186 at *2; 20 C.F.R. §404.1529(c)(3)(i-vii); §416.929(c)(3)(i-vii).

First, the ALJ referred to a lack of medical documentation for fatigue. (Tr. 15). He explained that the diagnosis for fibromyalgia was not "well established" and that there were only occasional episodes of low blood sugar. This analysis comports with the first prong of 96-7p to assess whether there is an underlying physical or mental impairment. Keener attempts to refute this with references to her complaints to her doctors and Dr. Royal's finding of "profuse weakness" (See Tr. 160). Subjective complaints do not establish the presence of an underlying condition. Those come into play in analysis under the second prong of SSR 96-7p. Moreover, Dr. Royal was referring to "motor loss, sensory deficit

1:07 CV 3907                                                                                      12

or other evidence of neuropathy " and not fatigue. The ALJ found no impairment which could reasonably account for the alleged degree of fatigue.

The ALJ then proceed to evaluate other factors as daily activities to assess the reasonableness of the alleged fatigue as required under the second prong of SSR 96-7p analysis. Keener complains that she testified that she had to stretch out her housework throughout the day and her hay baling activities consisted of driving a truck, which she had not done the past summer. (Tr. 224). However, the ALJ certainly obtained substantial evidence from the reported activities in the medical records.

Finally, the cardiac stress test did relate to the location, duration, frequency, and intensity of pain, or more precisely fatigue. The test was stopped due to complaint of bilateral arm heaviness. (Tr. 150). Nevertheless, Keener demonstrated her ability to perform strenuous work for this interval without debilitating discomfort and functional limitation. Keener has not established error in the ALJ's credibility analysis. The ALJ followed the required format and expressed clear reasons for finding that Keener's testimony concerning her fatigue was "not entirely credible." Consequently, the ALJ had substantial evidence to discount Keener's alleged disabling fatigue.

### *CONCLUSION AND RECOMMENDATION*

The issues before this court must be resolved under the standard of whether the determination is supported by substantial evidence of record. "Under 42 U.S.C. §405(g), the ALJ's findings are conclusive as long as they are supported by substantial evidence." *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir. 1986) (stating that this court's review "is limited to

1:07 CV 3907                                        13

determining whether there is substantial evidence in the record to support the findings").")  *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).  Plaintiff's arguments fail to demonstrate error in the final administrative decision. The Commissioner's decision is supported by substantial evidence.  Based on the arguments presented, the record in this matter and the applicable law, the undersigned recommends that the Commissioner's determination denying disability insurance benefits be affirmed as supported by substantial evidence with judgment entered for the Commissioner.

                                                                                            s/James S. Gallas
                                                       United States Magistrate Judge

     *ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: February 13, 2009